COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Athey and Lorish


GEORGE THOMASSON, III

v.     Record No. 0312-21-2

CHESTERFIELD COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
NOVEMBER 9, 2021


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

(Michelle Anthony Snell; Winslow, McCurry & MacCormac, PLLC,
on brief), for appellant.  Appellant submitting on brief.

(Michael P. Kozak, Deputy County Attorney; Jennifer M. Newman,
Guardian *ad litem* for the minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


George Thomasson, III (father) appeals the circuit court's order terminating his parental

rights to his child, S.T.[1]  Father argues that the circuit court erred in finding sufficient evidence to

terminate his parental rights under Code § 16.1-283.  Upon reviewing the record and briefs of the

parties, we conclude that the circuit court did not err.  Accordingly, we affirm the decision of the

circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We use initials to refer to the child in order to attempt to better protect the child's
privacy.

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Before the Chesterfield County Department of Social Services (the Department) became involved with father and S.T., the Henrico County Department of Social Services had provided foster care prevention services since June 2018. During that time, S.T. lived with his biological mother and had supervised visitation with father.[3] When mother moved, Henrico County DSS transferred the matter to the Chesterfield County Department of Social Services.

In March 2019, the Chesterfield County Juvenile and Domestic Relations District Court (the JDR court) entered emergency and preliminary removal orders after finding that S.T. was subject to an imminent threat to life or health. S.T. entered foster care, and the Department placed him with Lawrence Mitchell, his maternal grandfather.

The Department was concerned with father's substance abuse so he was required to submit to random drug screening, required to participate in case management with his therapeutic providers, and required to receive psychiatric and mental health outpatient therapy. The Department also arranged supervised visitation with S.T. and met with father to help him understand S.T.'s

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[3] The Chesterfield County Juvenile and Domestic Relations District Court terminated the biological mother's parental rights to S.T. in October 2020. She did not appeal that decision.

wellbeing. Initially, father's supervised visitation was scheduled for two hours once per week. In June 2019, that visitation increased to three hours once per week. In October 2019, however, it decreased to two hours once per week because father had failed to comply with his drug screens.

In November 2019, father told the Department that he was not going to participate in any visitation going forward. Although the Department advised father to continue visiting with S.T., he cancelled visitation on December 19, 2019 because he felt that two hours was insufficient for developing a relationship and bonding with his son. Father inquired about visitation at a meeting in March 2020 but threatened that he would not consider visitation again if it was not longer than two hours. Father abruptly left the meeting when the Department declined his request. In any event, father went approximately nine months without visiting or communicating with S.T.

In July 2020, after the JDR court approved the foster care goal of adoption, father again requested visitation so as not to "upset the judge." The Department arranged two virtual visits with S.T. because of the COVID-19 pandemic, but father made inappropriate comments to S.T. during both visits. The Department scheduled three meetings to discuss the virtual visits with father and how to move forward. Father, however, did not attend any of those meetings. Accordingly, the Department declined to arrange any further visits.

In addition, the Department required father to submit to random drug screens because he had admitted to cocaine use in January 2019, just before S.T. entered the Department's care. Father repeatedly tampered with the drug screens by dropping the samples in the toilet, using "an apparatus," and providing samples that had a "wrong temperature." Father also cut his hair before a hair follicle test, and, because his hair was too short, the test could not be completed. Even though the Department requested at least twelve drug screens, father provided only two valid samples, which tested positive for marijuana and cocaine. The Department never received a clean drug screen from father.

The Department was also concerned with father's mental health and instructed him to undergo intensive psychotherapy. Father did not receive any therapy until January 2020, when he began seeing a provider each month. Nevertheless, the Department was concerned because the provider did not have knowledge of father's mental health history and background. After father began therapy, his sister contacted the Department because he had sent her concerning emails, including pictures of a stabbed stuffed bunny and lunchbox. At a meeting with the Department, father was "extremely disregulated," crying, and stated he would voluntarily terminate his parental rights. Father also stated he was going to leave Virginia and live in the mountains of West Virginia.

On July 20, 2020, the Department petitioned to terminate father's parental rights. On October 9, 2020, the JDR court terminated father's parental rights to S.T. Father appealed the JDR court's ruling to the circuit court. At a hearing on February 1, 2021, father testified that "after having time to unplug[,] discharge a lot of emotions," and prioritizing his goals, he wanted to be in S.T.'s life. Father stated that the experience had been traumatic for him. He acknowledged that he had "squandered a lot of opportunities" but claimed he had been committed to S.T. "since day one." When the circuit court asked father what he had done for S.T., father stated that he donated in S.T.'s name to Children's Hospital. Father testified that he regretted his mistakes but made attempts to connect with his son.

The Department argued that S.T. had been in foster care for twenty-three months, that father had voluntarily failed to maintain continued contact with S.T. for at least six months, and that the condition that brought S.T. into care had not been substantially remedied within twelve months. After considering the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(C)(1) and (C)(2). This appeal followed.

ANALYSIS

Father challenges the sufficiency of the evidence to terminate his parental rights to S.T. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Under Code § 16.1-283(C)(1), one of the bases for the circuit court's order terminating father's parental rights, a court is authorized to terminate parental rights if:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

The record supports the trial court's termination of father's parental rights under Code § 16.1-283(C)(1). In October 2019, after the Department decreased father's weekly visitation time

because of his failure to comply with drug screens, father told the Department that he was not going to participate in any further visitation going forward. The Department advised father that he should continue visiting S.T., but father cancelled his visit on December 19, 2019, because he felt that two hours was insufficient for developing a relationship and bonding with S.T. He then refused to visit with S.T. for approximately nine months despite the Department's services and advice that he should continue visitation.

Nevertheless, father argues that Code § 16.1-283(C)(1)'s six-month timeline was tolled by the Supreme Court of Virginia's March 16, 2020 order declaring a judicial emergency in response to COVID-19 emergency, which directed that "all deadlines are hereby tolled and extended, pursuant to Va. Code § 17.1-330(D)." See March 16, 2020 Order Declaring a Judicial Emergency in Response to COVID-19 Emergency. Code § 16.1-283(C)(1)'s six-month timeline, however, is not a deadline as contemplated by the Supreme Court's emergency orders. Indeed, Code § 16.1-283(C) did not require father to have access to the court or to file any documents with the court within that six-month time frame. See Code § 17.1-330(D) (stating that a "judicial emergency may be declared . . . when a disaster . . . substantially endangers or impedes the operation of a court, the ability of persons to avail themselves of the court, or the ability of litigants or others to have access to the court or to meet schedules or time deadlines"). Rather, it merely provides that parental rights may be terminated if a parent, "without good cause, fail[s] to maintain contact with and to provide or substantially plan for the future of the child for a period of six months" after the child enters foster care. Code § 16.1-283(C)(1). That required involvement with and visitation to his child is not a "deadline" the Supreme Court's emergency orders tolled.

In addition, the record demonstrates that father voluntarily ceased visitation with S.T. in November 2019, approximately five months before the Supreme Court's first emergency order. Although father inquired about visitation in March 2020, he demanded that visits be longer than two

hours and abruptly left a meeting when the Department denied his demands.  Moreover, the Department arranged for two virtual visitations during the pandemic, but father made inappropriate comments to S.T. during both visits, and father refused to attend meetings with the Department to discuss his behavior.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).  Father simply refused to visit or communicate with S.T. for approximately nine months – more than half of which occurred before the COVID-19 pandemic began – and declined to accept the Department's help in establishing that communication.  Thus, the circumstances of this case show that father, without good cause, failed to maintain continuing contact with S.T. for more than six months, notwithstanding the reasonable and appropriate efforts by the Department.  Considering the totality of the circumstances, we cannot say that the circuit court erred in terminating father's parental rights under Code § 16.1-283(C)(1).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and, therefore, did not also need to address termination of parental rights pursuant to another subsection).  Because we find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(1), it is not necessary for us to reach the question of whether father's parental rights also should have been terminated under Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>